# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| EDWARD W. GRAY,<br><br>             Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>             Defendant. | 1:09-cv-00379-SKO<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT**<br><br>(Doc. 1) |

## BACKGROUND

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") payments pursuant to Titles II and XVI of the Social Security Act (the "Act"). 42 U.S.C. §§ 401, *et seq*. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 7, 10.) On April 7, 2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

## FACTUAL BACKGROUND

Plaintiff was born in 1955, has a high school education, and previously worked at a tire shop where his job duties included sweeping, cleaning, and mounting, dismounting, and disposing of tires. (Administrative Record ("AR") 22, 121.) On April 14, 2006, Plaintiff filed an application for DIB and SSI payments, alleging disability beginning April 1, 2003, due to a back injury, depression, anxiety, and a learning disability. (AR 87-97.)

In May 2002, Plaintiff was involved in a work-related accident that resulted in injury to his right knee. (AR 184-203.) After returning to work following his right-knee injury, Plaintiff was again injured in October 2002. (AR 195-99.) Plaintiff was diagnosed with lower back strain and was told by his doctor not to return to work until October 16, 2002. (AR 195-99.) Plaintiff continued to undergo treatment for his lower back injury, but was ultimately unable to relieve much of the pain associated with the injury. (AR 210-48.) Dr. Jackie Chan, Plaintiff's treating physician, diagnosed him with myofascial pain and degenerative disc disease with bilateral lumbar radiculitis. *Id.* At some time prior to April 1, 2003, Plaintiff stopped working due to his medical impairments.

Between May 2003 and February 2004, Plaintiff continued to seek treatment from Dr. Chan. (AR 210-35.) Plaintiff underwent epidural steroid injections. *Id.* Ultimately, Dr. Chan opined that Plaintiff "will likely require vocational rehabilitation" and work restrictions should include "no lifting greater than 20 lbs. and no repetitive bending or stooping at [the] waist." (AR 215-16.)

On June 16, 2005, Plaintiff was admitted to the Doctors Medical Center with chest pain. A myocardial perfusion stress test "showed no strong evidence of ischemia or infarction," and an echocardiogram indicated "focal aortic and mitral valve thickening with moderate aortic insufficiency." (AR 356.) Based on these tests, Dr. Daniel Diep found that Plaintiff "likely has hypertension, as he had elevated blood pressures on admission." (AR 357-404.)

On June 9, 2006, Amber Pierce, a Social Security Administration Disability Examiner (*See* AR 44) compiled the medical evidence in the case, and provided "conclusions and recommendations" as to both a physical residual functional capacity ("RFC") and a mental residual

functional capacity ("MRFC"). Ms. Pierce's "conclusions/recommendations" included the following:

> CONCLUSIONS/RECOMMENDATIONS: LIGHT RFC W/OCC STOOP; FORM COMPLETED & SAVED IN J DOCUMENTS.
>
> PSYCHIATRICALLY, APPEARS CLT HAS A SIGNIFICANT IMPAIRMENT WHICH WOULD PRECLUDE WORK ACTIVITY. UNFORTUNATELY, PSYCH ISSUES 1ST MENTIONED IN 1/06. WHILE CLT HAS LONG-STANDING LEARNING DISABILITY, HE WAS ABLE TO WORK SUCCESSFULLY FOR YRS DESPITE IT. APPEARS THAT CLT'S ADD'L ISSUES OF INCREASING LOW BACK PAIN AND ANXIETY/DEPRESSION HAVE WORSENED HIS COGNITIVE DIFFICULTIES W/ADVERSE ONSET OF 1/06. AS WE HAVE INSUFFICIENT PSYCH INFO PRIOR TO THIS TIME FOR EARLIER ONSET. J DOCUMENTS CREATED PREPARED.

(AR 450.)

Ms. Pierce's conclusions and recommendations were followed by a written statement from Dr. Jackson: "MC RESPONSE: W Jackson, MD; Spec. Code 45; 6/16/06[:] Agree with the above recommendation. See RFC." (AR 450.)

On June 15, 2006, Plaintiff underwent a psychological evaluation by Roxanne Morse, Ph.D. Dr. Morse diagnosed Plaintiff with a cognitive disorder, not otherwise specified ("NOS"), a depressive disorder, NOS, and learning disorders. (AR 440.) Dr. Morse found that Plaintiff showed a "marked impairment" in reading, spelling, and arithmetic. (AR 441.) Dr. Morse also found that Plaintiff had difficulty maintaining attention, concentration, pace, and persistence for the duration of the evaluation. (AR 441.) As a result of Plaintiff's mental impairments, Dr. Morse opined that Plaintiff is limited to a fourth grade reading level, a second grade level for math, and is only able to spell at a first grade level. (AR 440.)

On June 16, 2006, Dr. Jackson reviewed and signed a physical RFC assessment.[2] The RFC assessment indicates that Plaintiff can occasionally lift more than 20 pounds, can frequently lift or carry 10 pounds, can stand or walk about six hours in an eight-hour workday, can sit for a total of about six hours in an eight-hour workday, and is unlimited in his ability to push or pull. (AR 442-46.)

On August 9, 2010, Dr. Richard Gann completed a Psychiatric Review Technique Form ("PRT") and a Mental RFC Assessment Form ("MRFC") evaluating Plaintiff's mental condition.

---

[2] The Physical RFC assessment states that it was "prepared by DEA III Amber Pierce Elliott." (AR 446.) It was signed, however, by Dr. Jackson.

(AR 452-70). Dr. Gann diagnosed Plaintiff as having depressive disorder, NOS and a cognitive disorder, NOS. (AR 455.) Dr. Gann checked boxes on the PRT Form indicating that Plaintiff had mild restrictions of activities of daily living, mild difficulties in maintaining social function, and no episodes of decompensation of extended duration. (AR 463.) However, Dr. Gann checked a box on the PRT Form indicating that Plaintiff had "moderate" difficulties in maintaining concentration, persistence, or pace. (AR 463.)

In the course of completing the MRFC, Dr. Gann checked boxes indicating that Plaintiff was "moderately limited" in his ability to (1) carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances; and (4) sustain an ordinary routine without special supervision. (AR 467.)

In concluding his review of Plaintiff's medical records, Dr. Gann opined as follows:

> The claimant is able to understand, remember, and carry out simple one and two step instructions. The claimant is able to relate to coworkers and supervisors adequately on a sustained basis, as well as accept instructions and respond appropriately to criticism. The claimant is able to maintain [concentration, persistence, or pace] for two-hour intervals, maintain regular attendance, and complete a normal workweek. The claimant is able to adapt to changes in the work setting.

(AR 469.)

After completing the evaluation forms related to Plaintiff's mental functional capacity, Dr. Gann provided an opinion regarding Ms. Pierce's disability evaluation "conclusions and recommendations." He provided a written statement below Ms. Pierce's "conclusions and recommendations" as follows: "Disagree with conclusions regarding mental issues. See PRTF & MRFC." Dr. Gann initialed this statement. (AR 450.)

On October 3, 2007, Dr. Robert Bixler determined that Plaintiff had chronic low back pain secondary to a 2003 job injury that had become worse since an assault in June 2006 as well as congestive heart failure. (AR 511.) Dr. Bixler opined that Plaintiff could not sustain prolonged exertion or bending. (AR 511.) Dr. Bixler also checked a box indicating that Plaintiff was not able to work full time. (AR 511.)

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 43-

46, 61-63.) On January 7, 2008, ALJ Sandra K. Rogers held a hearing where Plaintiff and Vocational Expert ("VE") David M. Dettmer provided testimony. (AR 11-23.) The VE testified that Plaintiff's past position at the tire shop could be categorized as a "tire technician" and is considered heavy[3] and semi-skilled work. (AR 39-40.) A hypothetical person with the same age, education, language, and work experience as Plaintiff could perform work existing in the national economy that includes the following: cashier, office helper, and parking lot attendant. (AR 39-40.)

Plaintiff testified that his prior employment involved work with custom car and truck tires. (AR 27.) He injured his back while performing his job duties at work. *Id.* Plaintiff stated he could presently stand for 20 to 30 minutes before he would need to sit, he could stand for approximately six hours of an 8-hour workday, and he took Darvocet for his back pain. (AR 30-31, 34.)

On June 11, 2008, the ALJ issued a decision, finding Plaintiff not disabled since April 1, 2003. (AR 8-23.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of April 1, 2003; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Code of Federal Regulations; (3) does not have a "severe" mental impairment; (4) does not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) could not perform his past relevant work; (6) has the RFC to perform light work; and (7) can perform jobs that exist in significant numbers in the national economy. (AR 8-23.) Plaintiff sought review of this decision before the Appeals Council. Plaintiff submitted new medical records (AR 529-30) to the Appeals Council indicating a heart condition, and requested that the matter be remanded so that the ALJ could consider the new records.

On December 17, 2008, the Appeals Council denied review, finding that the new medical information "does not provide a basis for changing the Administrative Law Judge's decision." (AR 5-7.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

---

[3] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, [the Commissioner] determine[s] that he or she can also do medium, light, and sedentary work." 20 C.F.R. §§ 404.1567(d), 416.967(d).

5

1    On February 26, 2009, Plaintiff filed a complaint before this Court seeking review of the
2 ALJ's decision. Plaintiff argues that the ALJ erred (1) in finding that Plaintiff did not suffer from
3 a severe mental impairment and (2) by failing to articulate specific and legitimate reasons for not
4 crediting Dr. Bixler's opinion. Plaintiff also argues that the Appeals Council erred in failing to
5 remand the matter back to the ALJ to consider new and material evidence Plaintiff had submitted
6 to the Appeals Council.

## SCOPE OF REVIEW

8    The ALJ's decision denying benefits "will be disturbed only if that decision is not supported
9 by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.
10 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that
11 of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must
12 determine whether the Commissioner applied the proper legal standards and whether substantial
13 evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d
14 909, 911 (9th Cir. 2007).

15    "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v.*
16 *Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such
17 relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
18 *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*,
19 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both
20 the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and
21 may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v.*
22 *Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

24    An individual is considered disabled for purposes of disability benefits if he is unable to
25 engage in any substantial, gainful activity by reason of any medically determinable physical or
26 mental impairment that can be expected to result in death or that has lasted, or can be expected to
27 last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A),
28 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or

impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy.  42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability.  In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c).  If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1.  *Id.* §§ 404.1520(d), 416.920(d).  If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work.  *Id.* §§ 404.1520(f), 416.920(f).  If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy.  *Id.* §§ 404.1520(g), 416.920(g).  If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps.  *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

**A.    The ALJ's Analysis at the Second Step**

   **1.    Legal Standard**

The evaluation at the Second Step has been held to be a *de minimis* test intended to weed out the most minor of impairments.  *See Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987); *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001) (stating step two inquiry is *de minimis* screening device to dispose of groundless claims).  An impairment is not severe if the evidence establishes a

slight abnormality that has only a minimal effect on an individual's ability to work. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

Where there is evidence of a mental impairment that allegedly prevents a claimant from working, the Social Security Administration ("SSA") has supplemented the five-step sequential evaluation process with additional regulations to assist the ALJ in determining the severity of mental impairments at steps two and three. *Maier v. Comm'r of Soc. Sec.*, 154 F.3d 913, 914-15 (9th Cir. 1998) (per curiam) (citing 20 C.F.R. § 416.920a).

First, the ALJ must determine the presence or absence of certain medical findings relevant to the claimant's ability to work. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation. *Id.* §§ 404.1520a(c)(2)-(4), 416.920a(c)(2)-(4). Third, after rating the degree of functional loss, the ALJ must determine whether the claimant has a severe mental impairment. *Id.* §§ 404.1520a(d)(2), 416.920a(d). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if a listing is not met, the ALJ must then assess the plaintiff's RFC, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the claimant's mental impairment, including a specific finding as to the degree of limitation as to each of the functional areas described in §§ 404.1520a(c)(3) and 416.920a(c)(3). *Id.* §§ 404.1520a(d)(3), (e)(2), 416.920a(d)(3), (e)(2).

The first three of the four areas of function (activities of daily living; social function; and concentration, persistence, or pace) are rated on a five-point scale: (1) none, (2) mild, (3) moderate, (4) marked, and (5) extreme. The degree of limitation in the fourth area of function (episodes of decompensation) is rated on a four-point scale: (1) none, (2) one or two, (3) three, and (4) four or more. *Id.* §§ 404.1520a(c)(4), 416.920a(c)(4). If the degrees of limitations in the first three functional areas are rated as "none" or "mild" and the fourth functional area is rated as "none," then

it will typically be concluded that the impairment is not severe. *Id.* §§ 404.1520(a)(d)(1), 416.920a(d)(1).

### 2. Analysis

Here, the ALJ found that Plaintiff had a medically determinable mental impairment of depression, but found that it did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is nonsevere. (AR 16.) The ALJ considered the four broad functional areas and rated Plaintiff as having mild limitation in activities of daily living; no limitation in social functioning; mild limitation in concentration, persistence, or pace; and no episodes of decompensation. (AR 16.) Plaintiff challenges the ALJ's finding that his mental condition is nonsevere, arguing that the ALJ's determination fails to account for or otherwise analyze the medical evidence of record that conflicts with the ALJ's findings.

#### a. Dr. Jackson Did Not Provide an Assessment of Plaintiff's Mental RFC.

Plaintiff argues that Dr. Jackson provided an opinion as to Plaintiff's MRFC that the ALJ failed to consider in concluding his mental impairment was not severe. However, Plaintiff is incorrectly crediting Dr. Jackson with conclusions and recommendations that were submitted by the disability examiner, Ms. Pierce, for Drs. Jackson and Gann to review and consider. (AR 450.) Ms. Pierce drafted conclusions and recommendations as to both Plaintiff's physical and mental RFC. Dr. Jackson stated that he agreed with Ms. Pierce's recommendation and cited to the physical RFC he completed on June 16, 2006. (AR 450, 442-46.) Dr. Gann also reviewed Ms. Pierce's conclusions and recommendations relating to Plaintiff's MRFC, stated explicitly that he disagreed with the conclusions and recommendations regarding mental issues, and referred to the mental assessments he had completed. (AR 450, 452-70.)

There is nothing to support Plaintiff's argument that Dr. Jackson provided an opinion regarding Plaintiff's mental limitations. Dr. Jackson is not a psychiatrist or a psychologist. His "specialty code" is noted in the record as 45 (AR 450) which is defined as a surgical specialty – not a psychiatric or psychological specialty. SSA Program Operations Manual System ("POMS"), Section DI 26510.090, *available at:* https://s044a90.ssa.gov/poms.nsf/lnx/0426510090. Dr. Jackson provided a physical RFC assessment, not a mental RFC assessment. (AR 442-46.) The ALJ's failure

to credit Dr. Jackson with providing an opinion as to Plaintiff's mental RFC was not error as Dr. Jackson did not provide any opinion in this area. Plaintiff misinterprets the report prepared by Ms. Pierce and mistakenly attributes to Dr. Jackson Ms. Pierce's conclusions and recommendations as to the Plaintiff's mental limitations.

### b. The ALJ Erred in Considering Plaintiff's Mental Impairment.

Next, Plaintiff argues that the ALJ failed to provide appropriate rationale for finding that his mental impairment was not severe. The Court finds this contention to have merit.

The ALJ failed to provide sufficient findings to support her ultimate conclusion that Plaintiff's mental limitation is "not severe." The ALJ considered Plaintiff's degree of limitation in the four functional areas for evaluating mental disorders and found Plaintiff to have only mild limitation in each of the first three functional areas, with no episodes of decompensation in the fourth area. (AR 16.) In reaching this conclusion, the ALJ gave probative weight to the opinion of non-examining physician Dr. Gann. (AR 16 ("After considering all the evidence, the undersigned accepts the assessment of [Dr. Gann]."), 452-55.) However, Dr. Gann's opinion is ambiguous as to the degree of limitation Plaintiff suffers in the third functional area in terms of concentration, persistence, or pace ("CPP"). Dr. Gann found that Plaintiff had "moderate" difficulty maintaining CPP. (AR 463.) Yet, Dr. Gann also found that the "claimant is able to maintain [CPP] for two-hour intervals." The ALJ did not explain or resolve the ambiguity in Dr. Gann's findings that Plaintiff was both moderately limited in terms of CPP, but could maintain CPP for two-hour intervals. It is not impossible that a "moderate" limitation may be consistent with maintaining CPP for two-hour intervals, but the ALJ did not explain how these findings, taken together, supported her ultimate finding that Plaintiff's limitation in this area was only "mild." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (internal inconsistencies or ambiguities contained in medical reports or between various medical reports must be resolved by the ALJ).

Moreover, Dr. Gann's findings contradict that of Dr. Morse. Specifically, Dr. Morse, an examining source, found that Plaintiff had "difficulty maintaining attention, concentration, pace, and persistence for the duration of the evaluation." (AR 441.) Dr. Morse also found that Plaintiff's capacity for sustained attention and mental tracking was "markedly impaired." (AR 440.) The ALJ

did not reconcile Dr. Gann's finding that Plaintiff could maintain CPP for two-hour intervals with Dr. Morse's contradictory finding that Plaintiff could not maintain CPP for even the course of time it took Plaintiff to undergo evaluation and that Plaintiff had a markedly impaired capacity for sustained attention and mental tracking. *Morgan*, 169 F.3d at 603.

Moreover, even assuming that Dr. Gann's findings supported a conclusion that Plaintiff's limitation in the area of CPP is only "mild" (although Dr. Gann himself rated the limitation as "moderate"), the ALJ did not provide any explanation why the findings and opinion of Dr. Gann, a non-examining source, were entitled to more weight than that of examining source Dr. Morse. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (for the ALJ to reject conclusions of examining physician in favor of a nonexamining physician, ALJ must set forth specific, legitimate reasons for doing so).

As the ALJ did not adequately discuss and weigh the various medical findings, the Court is prevented from reviewing the ALJ's decision in this regard. *See Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ need not discuss all evidence in the record, but must not reject significant probative evidence without explanation why it was rejected). Moreover, the ALJ failed to state specific and legitimate reasons for rejecting findings made by examining source Dr. Morse that appear to conflict with findings made by non-examining source Dr. Gann.

The choice of whether to reverse or remand a case for further proceedings is within the discretion of the Court. *McAlister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision. *Marcia v. Sullivan*, 980 F.2d 172, 176 (9th Cir. 1990).

Here, the ALJ did not provide sufficient reasons for rejecting Dr. Morse's findings on examination and instead crediting the contradictory findings of Dr. Gann who had not examined the Plaintiff. The Court cannot speculate as to what the ALJ's specific reasons for rejecting Dr. Morse's findings would have been. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). Thus, remand is appropriate so that the ALJ can once again consider Dr. Morse's opinion and findings. If the ALJ rejects Dr. Morse's opinion and

findings, specific and legitimate reasons for doing so should be set forth. Further, to the extent that the ALJ again finds Dr. Gann's findings and opinion more persuasive and sets forth specific and legitimate reasons for doing so, the ALJ should also explain how these findings specifically support the conclusion reached as to whether Plaintiff's mental impairment is severe or not. In other words, the ambiguity in Dr. Gann's opinion as to the extent of Plaintiff's limitation for CPP should be resolved and explained.

**B.      ALJ Did Not Fail to Fully and Fairly Develop the Medical Record.**

Plaintiff argues that there are missing medical records from Dr. Bixler for the time period between January and September 2007 that the ALJ failed to obtain that may corroborate Dr. Bixler's diagnosis of congestive heart failure. Plaintiff does not explain how the ALJ would have been aware of the existence of relevant medical records from January to September 2007 triggering a duty to seek them out. Plaintiff argues the mere receipt of Dr. Bixler's one-page opinion should have prompted the ALJ to seek other records from Dr. Bixler or, at the very least, to inquire further to clarify the basis for Dr. Bixler's findings.

The ALJ has a special duty "to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). However, an ALJ's duty to further develop the record is only triggered when there is ambiguous evidence or the record is inadequate to allow for proper evaluation of evidence. *Id.* at 459-60. The Ninth Circuit has held that there is no duty to re-contact doctors if the evidence in the record is adequate for the ALJ to make a determination. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

It is Plaintiff's duty to prove he is disabled. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require"). As the Ninth Circuit observed in *Mayes*, the Code of Federal Regulations explains:

> you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairments and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis. We will consider only impairment(s) you say you have or about which we receive evidence.

12

20 C.F.R. § 404.1512(a); *see also* 20 C.F.R. § 416.912(a).

Here, Plaintiff was represented by counsel and had opportunity to apprise the ALJ of any additional records from Dr. Bixler both at the time of the January 2008 hearing and after the hearing when the record was left open. Neither Plaintiff nor his counsel submitted medical records for the period between January and September 2007. Other than alluding to missing records, Plaintiff does not indicate affirmatively that the records actually exist or that they are necessarily material to the ALJ's decision in this respect. The ALJ did not err in her duty to fully and fairly develop the record with respect to re-contacting Dr. Bixler to inquire about additional medical records.

However, because this case is to be remanded, Plaintiff is free to submit these medical records, if they exist, to the ALJ for consideration.

**C.     Newly Submitted Medical Evidence Should Be Considered by the ALJ on Remand.**

Finally, Plaintiff argues that the Appeals Council erred in failing to review the ALJ's decision and remand the matter to the ALJ for consideration of new and material evidence.

Pursuant to 20 C.F.R. §§ 404.970(b) and 416.1470(b), if new and material evidence is received by the Appeals Council, its duty is detailed as follows:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently in the record.

Here, Plaintiff submitted new medical evidence and requested that the Appeals Council review the ALJ's decision. The Appeals Council reviewed Plaintiff's reasons for disagreement with the ALJ's decision as well as the additional evidence, but concluded that the new evidence did not provide a basis for changing the ALJ's decision. (AR 5.) Further, the Appeals Council stated that the request for review of the ALJ's decision was denied and that the ALJ's decision was the final decision of the Commissioner. (AR 4.)

The Court is without jurisdiction to review the Appeals Council's denial of a request for review. *Damato v. Sullivan*, 945 F.2d 982, 988 (7th Cir. 1991) ("[i]f the Appeals Council denies a request for review, the ALJ's decision becomes the final decision of the Secretary, and judicial

review is available only for final decisions of the Secretary." (citing *Califano v. Sanders*, 430 U.S. 99, 108 (1977))); *see also Woodsum v. Astrue*, No. C09-537ORJB-KLS, 2010 WL 1849209, at *3-7 (W.D. Wash. May 7, 2010) (finding *Damato* persuasive authority for proposition that denial of request for review by Appeals Council is not subject to judicial review).

However, where the Appeals Council also makes findings regarding additional medical evidence submitted to it in conjunction with a request to review the ALJ decision, the Court may properly consider these additional materials. *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

Here, the newly submitted medical records consist of test results from a February 2008 echocardiogram. The results of the echocardiogram indicate a diagnosis of "combined systolic & diastolic heart failure unspecified." (AR 529.) The ALJ's sole reason for rejecting Dr. Bixler's opinion as to Plaintiff's exertional limitation due to congestive heart failure was that the diagnosis of congestive heart failure was not confirmed by the evidence of record. As the new evidence indicates that Plaintiff does suffer from congestive heart failure, the ALJ should have an opportunity to once again consider Dr. Bixler's opinion as to the limitations Plaintiff suffers as a result of his heart condition and whether it impacts Plaintiff's RFC.

As the ALJ will have an opportunity to reconsider Dr. Bixler's opinion in light of the newly submitted medical records, it is unnecessary for the Court to address Plaintiff's argument as to the ALJ's determination of the probative value of Dr. Bixler's opinion. Plaintiff's arguments in this regard are necessarily interrelated with the newly submitted medical records, which will be considered by the ALJ on remand.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, REVERSED and the case REMANDED to the ALJ for further proceedings consistent with this order. The Clerk of this Court is DIRECTED to enter judgment in

///

///

1  favor of Plaintiff Edward W. Gray and against Defendant Michael J. Astrue, Commissioner of Social
2  Security.
3
4  IT IS SO ORDERED.
5  **Dated:    September 29, 2010**               /s/ Sheila K. Oberto
                                                  UNITED STATES MAGISTRATE JUDGE
6